# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

JHENNA HERNANDEZ DE LA TORRE, Individually and as Personal Representative of the Estate of Decedent SAUL HERNANDEZ DE LA TORRE,

    Plaintiffs,

v.

LA PLATA COUNTY, COLORADO;
ARCHULETA COUNTY, COLORADO[1];
ROBERT BOSICK, in his official and individual capacities;
RYAN IMONDI, in his official and individual capacities;
PATRICK MOHNEY, in his official and individual capacities;
NATALIE AIKEN, in her official and individual capacities;
JOHN AND JANE DOES 1-5, in their official and individual capacities;

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiffs, by and through their attorneys, David A. Lane and Reid Allison of KILLMER, LANE & NEWMAN, LLP, and Ken Falkenstein of IRWIN FRALEY, PLLC, hereby brings this Complaint and Jury Demand and alleges as follows:

---

[1] La Plata County, Colorado and Archuleta County, Colorado are the correct names of the governmental entity Defendants. However, there is a split of opinion on this issue among some judges in this district and elsewhere. Some judges require that plaintiffs name the Board of County Commissioners and/or the sheriff in his/her official capacity to name a Colorado county as a Section 1983 defendant. If the Court in this matter ultimately requires Plaintiffs to name as Defendants the relevant Board of County Commissioners or Sheriffs in their official capacity, or some other entity in order to obtain municipal liability against the Defendant Counties, Plaintiffs will substitute parties. This shall serve as notice to those putative Defendants.

## INTRODUCTION

This is the tragic case of Saul Hernandez de la Torre. Mr. Hernandez de la Torre spent seven months detained in the La Plata County Jail, after he was arrested in late 2018 in Archuleta County, Colorado. On May 24, 2019, he refused to eat each of his three meals and made suicidal statements to jail staff. In response to his suicidal condition, the jail put him on suicide watch. Shockingly, in his single-occupant suicide-watch cell, one or more of the Defendants left him with bed sheets and a bunk bed.  Two days later, he was left unmonitored for hours on end, during which he fashioned a noose out of the sheet in his cell, attached it to the top bunk, and hanged himself. He was just 21 years old.

## JURISDICTION AND VENUE

1.     This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983.

2.     This is also an action pursuant to C.R.S. §§ 13-21-202 and 13-21-203 for damages suffered by The Estate of Saul Hernandez de la Torre, and Plaintiff Jhenna Hernandez de la Torre ("Mrs. Hernandez") as a consequence of the wrongful death of her husband, Saul Hernandez de la Torre.

3.     Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1367. Jurisdiction supporting Plaintiffs' claim for attorneys' fees and costs is conferred by 42 U.S.C. § 1988.

4.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State at the time of the events giving rise to this litigation.

## PARTIES

5. At all relevant times, the decedent, Saul Hernandez de la Torre, was a citizen of the United States of America and a resident of the State of Colorado detained in the La Plata County Jail.

6. At all relevant times, Jhenna Hernandez de la Torre, personal representative to the Estate of Saul Hernandez de la Torre, has been a citizen of the United States of America.

7. Defendant La Plata County is responsible for the operations of the La Plata County Jail ("Jail") and the guarding, supervision, and care of the inmates of the Jail. The Jail houses inmates who have been charged or convicted of crimes in La Plata County, Colorado, and other localities in Colorado, including Archuleta County, that contract to have inmates placed in this facility. Defendant Archuleta County is responsible for the medical care and protection of detainees in their legal custody, like Mr. Hernandez de la Torre.

8. At all relevant times, Defendant Robert Bosick was a citizen of the United States and a resident of Colorado. At all relevant times, he was acting under color of state law in his capacity as a jail guard employed by the La Plata County Sheriff's Office.

9. At all relevant times, Defendant Ryan Imondi was a citizen of the United States and a resident of Colorado. At all relevant times, he was acting under color of state law in his capacity as a jail guard employed by the La Plata County Sheriff's Office.

10. At all relevant times, Defendant Patrick Mohney was a citizen of the United States and a resident of Colorado. At all relevant times, he was acting under color of state law in his capacity as a jail guard employed by the La Plata County Sheriff's Office.

11. At all relevant times, Defendant Natalie Aiken was a citizen of the United States and a resident of Colorado. At all relevant times, she was acting under color of state law in her capacity as a nurse employed by La Plata County to provide medical care in the jail.

12. At all times, Defendants John and Jane Does were citizens of the United States and residents of Colorado. At all relevant times, Defendants were acting under color of state law in their capacities as deputies employed by the La Plata County Sheriff's Office.

## FACTUAL ALLEGATIONS

13. On October 6, 2018, Saul Hernandez de la Torre was arrested in Archuleta County, Colorado.

14. At that time, the Archuleta County Jail was deemed uninhabitable, and Archuleta County entered into an Intergovernmental Agreement with La Plata County to house Archuleta County inmates and arrestees at the La Plata County Jail.

15. Pursuant to the aforesaid Intergovernmental Agreement, Mr. Hernandez de la Torre was placed and kept in custody in F Block of the La Plata County Jail.

16. La Plata County is responsible for the operations of its Jail and the guarding, supervision, and care of the inmates of the Jail. Archuleta County retained a non-delegable legal duty to provide care for Mr. Hernandez de la Torre's medical needs.

17. During the entire time that Mr. Hernandez de la Torre was housed at the La Plata County Jail, the Jail suffered from well-publicized overcrowding and understaffing.

18. Mr. Hernandez de la Torre and the entire F Block were on lock-down 23 hours per day every day except Sunday, during which they were on lock-down for the entire 24 hours.

Inmates were let out only one at a time during the one hour that they were each allowed out of their cells each day (except Sunday).

19. On Friday May 24, 2019, after having been detained in this manner for over seven months, Mr. Hernandez de la Torre refused to eat any of the three meals provided to him. He reported to Jail staff that he was having "suicidal thoughts," and he requested to talk to someone who could help him.

20. Mr. Hernandez de la Torre was then placed on suicide watch due to his refusal to eat the three meals and his comments about self-harm.

21. Mr. Hernandez de la Torre was taken to the booking area, where he met with personnel from Axis Mental Health. Axis prepared a safety plan for him in which he was expected to notify staff if he started feeling like he needed help.

22. Later that same day, in accordance with this plan, Mr. Hernandez de la Torre submitted a "kite" – a written request for assistance by an inmate – to medical staff.

23. This kite was never answered.

24. Two days later, on May 26, 2019, Mr. Hernandez de la Torre killed himself in his cell by using a bedsheet given to him by the Defendants, which was wrapped around the top of his bunk bed.

25. A surveillance camera allowed guards to see what was happening in Mr. Hernandez de la Torre's cell, but despite the fact that he was on suicide watch as of May 24, none of the named Defendants or Defendant John/Jane Does who were on shift watched him through that monitor to ensure that he did not harm himself. Indeed, more than two hours passed

5

from the time Mr. Hernandez de la Torre hung himself until his body was discovered by Defendants.

26. Defendants Deputy Robert Bosick, Deputy Ryan Imondi, and Sergeant Patrick Mohney were at that time sheriff's deputies employed by Defendant La Plata County and assigned as guards at the Jail.

27. On May 26, 2019, Deputies Bosick, Imondi and Sergeant Mohney were each responsible for checking on the inmates in F Block.

28. At that time, Deputies Bosick and Imondi were aware that Mr. Hernandez de la Torre had been placed on suicide watch. Sergeant Mohney knew that Mr. Hernandez de la Torre had been placed on suicide watch.

29. Despite being aware that Mr. Hernandez de la Torre was on suicide watch, Deputy Imondi never checked on Mr. Hernandez de la Torre at any point that day.

30. Sergeant Mohney also never checked on Mr. Hernandez de la Torre at any point that day. Similarly, John and Jane Does 1-5, who were on shift at the La Plata County Jail on May 26, 2019, and aware that Mr. Hernandez de la Torre was on suicide watch did not check on him or monitor his actions via the available video.

31. Despite being aware that Mr. Hernandez de la Torre was on suicide watch, Deputy Bosick only checked on him two times during his shift: first when delivering breakfast at approximately 6:30 a.m., and second around 12:15-12:30 p.m. because he had something to do with the inmate in the cell next to Mr. Hernandez de la Torre's.

32. Defendant Registered Nurse Aiken knew that Mr. Hernandez de la Torre had been placed on suicide watch on May 24, and that he had sent a kite to the jail's medical staff late that

evening. Even so, she did not check on him on May 26, 2019, or otherwise ensure that he was protected from himself, despite his known substantial risk of self-harm.

33. At 1:45 p.m., Mr. Hernandez de la Torre attached his bedsheet to the top bunk and rolled the sheet into a makeshift rope.

34. At 1:48 p.m., Mr. Hernandez de la Torre placed the sheet around his neck and sat down.

35. Mr. Hernandez de la Torre then sat there with the makeshift rope around his neck for a full eight minutes, doing nothing.

36. At 1:56 p.m., Mr. Hernandez de la Torre dropped from the bed and hanged himself.

37. Mr. Hernandez de la Torre had been placed on suicide watch, and his cell contained a bunk bed and bed sheets, but he did not have any cell mates when he killed himself.

38. Because none of the guards responsible for checking on him were doing so, Mr. Hernandez de la Torre's body remained hanging from that makeshift rope for 2½ hours before being discovered.

39. Finally, sometime after 4:30 p.m., Deputy Bosick went by Mr. Hernandez de la Torre's cell, not to check on him but only to deliver inmates' evening meals, and at that time discovered Mr. Hernandez de la Torre hanging from his makeshift rope.

40. An autopsy confirmed that Mr. Hernandez de la Torre had died from asphyxia caused by hanging.

41. As a result of the foregoing, which led to the wrongful death of Mr. Hernandez de la Torre, Plaintiff has suffered damages as set forth in more detail below.

42. Defendants La Plata County and Archuleta County ("the County Defendants") failed to properly train, supervise, and discipline the Individually Named Defendants, despite the obvious need for scrutiny in specialized trainings, supervision, and discipline regarding decisions about the monitoring and care required for detainees who are placed on suicide watch at the jail, and the fact that its current custom, polices, an/or practices with respect to training, supervision, and discipline are clearly likely to result in a violation of constitutional rights.

43. The County Defendants are in charge of training and supervising their deputies on such basics of suicide prevention, such as not giving a suicidal inmate access to bedsheets or anything else with which to hang themselves, regularly monitoring the inmate, giving the inmate access to staff immediately if the inmate is about to self-harm, and paying attention to kites submitted by the inmate.

44. The County Defendants have a custom, policy and practice of deliberate indifference to the protection of suicidal inmates as is evidenced by the placement of a suicidal inmate into a single cell with bedsheets, a bunk bed, no actual monitoring and a failure to respond to the inmate's kite.  Clearly, the Sheriffs in their official capacities (the Counties), failed to adequately train and supervise their deputies in suicide prevention at the jail.

45. No individually named Defendant was disciplined for their actions, nor was any Defendant informed by Sheriff's Department Command Staff that their conduct fell outside of approved departmental custom or practice.

46. The County Defendants' response to these events evidences a pattern and practice of failing to discipline officers for constitutional violations. By failing to discipline Defendants for their unconstitutional conduct, the County Defendants approved this conduct, and effectively

trained the individual defendants and other members of the Sheriff's Department that such conduct is consonant with official custom, policy and practice.

47. The County Defendants' approval of the individually named defendants' unconstitutional actions sends a clear and unequivocal message to its employees—indeed, it *trains* them—that such constitutional violations are acceptable, consistent with policy, and are approved practice, causing similar constitutional violations to be likely or even inevitable in the future.

48. It is the County Defendants' responsibility to properly train their employees to ensure they perform their duties correctly and to discipline, rather than approve their conduct, so that employees can learn from their mistakes and perform their jobs correctly moving forward. Failure to do so will lead to more unconstitutional conduct by La Plata and Archuleta County deputies.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**§1983 – Fourteenth Amendment**
**Failure to Provide Medical Care and Treatment**
**(Against All Defendants)**

49. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

50. At all times relevant to the allegations in this Complaint, Defendants acted or failed to act under color of state law.

51. Defendants are suable persons under 42 U.S.C. § 1983.

52. At all times relevant to the allegations in this Complaint, Individual Defendants were acting pursuant to the County Defendants' municipal custom, policy, or practice in their actions pertaining to Mr. Hernandez de la Torre.

53. At all times relevant to the allegations in this Complaint, Defendants knew or should have known of Mr. Hernandez de la Torre's potentially life-threatening psychological condition.

54. Nevertheless, with deliberate indifference to Mr. Hernandez de la Torre's constitutional right not to be denied necessary medical care, protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Defendants failed to examine, treat, and care for his worsening condition. They did so despite their knowledge of his serious medical needs, placing him at risk of substantial physical harm.

55. When Mr. Hernandez de la Torre alerted Defendants to his need for psychological assistance, Defendants acted with deliberate indifference to his obviously serious medical need and constitutional rights by failing to monitor him to ensure that he did not harm himself and to obtain medical treatment for him in a timely and appropriate fashion.

56. Despite the knowledge that Mr. Hernandez de la Torre was suicidal, and despite the common knowledge that the primary method of jail suicide is through hanging, the Defendants not only failed to monitor him, they provided him with the means to kill himself by leaving him alone with bedsheets in his cell and a bunk bed.

57. The acts or omissions of all Defendants were within the scope of their official duties and employment.

58.     The acts or omissions of all Defendants were the legal and proximate cause of Mr. Hernandez de la Torre's injuries and death.

59.     Defendants La Plata County's and Archuleta County's unconstitutional policies, customs, or practices, as described herein, were the legal and proximate cause of the injuries and death.

60.     The acts or omissions of each Defendant caused Mr. Hernandez de la Torre damages in that he suffered extreme mental and physical pain during the days and hours leading up to his death and ultimately caused his death.

61.     The actions or inactions of Defendants as described herein intentionally deprived Mr. Hernandez de la Torre of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other damages.

**SECOND CLAIM FOR RELIEF**
**State Law Claim for Wrongful Death under Colo. Rev. Stat. § 13-21-202**
**(Against all Defendants)**

62.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

63.     The claims herein pertain to injuries resulting from the operation of a correctional facility. Accordingly, Defendants' sovereign immunity is waived under C.R.S. § 24-10-106(1)(b).

64.     Defendants had a duty to provide reasonable medical/mental health care and treatment to detainees at the jail, including Mr. Hernandez de la Torre.

65.     Through their actions and omissions, Defendants breached their duty of care when they knowingly failed to properly assess, monitor, treat and care for Mr. Hernandez de la Torre,

despite that fact that he was in obvious need of medical/mental health attention and monitoring to prevent his imminent self-harm.

66. These duties of care are informed by state law. Under C.R.S. § 16-3-401, "prisoners arrests or in custody shall be treated humanely and provided with adequate food, shelter, and, if required, medical treatment." The provision of adequate medical treatment and humane care is a statutory obligation.

67. As a direct and proximate result of Defendants having breached their duty to provide reasonable medical/mental health care, treatment, and monitoring to Mr. Hernandez de la Torre, he suffered significant physical and mental pain and suffering, and other damages, and ultimately died.

68. The negligent acts and omissions by Defendants were a substantial and significant contributing proximate cause of the death of Mr. Hernandez de la Torre.

69. As a result of the complained of negligence, Plaintiff has suffered damages, losses and injuries in an amount to be determined by the jury at trial. These damages include, *inter alia*, pain and suffering, upset, grief, loss of society and companionship, anger, depression, and all other purely non-economic damages as allowed under the Colorado Wrongful Death Act.

70. Plaintiff suffered and continues to suffer economic and non-economic damages due to Defendants' negligent conduct toward Plaintiff's husband, including, but not limited to, funeral expenses, and non-economic damages for grief, loss of her husband's companionship, impairment in the quality of her life, inconvenience, pain and suffering, and extreme emotional distress. Plaintiff is therefore entitled to general and compensatory damages for such pain and suffering and emotional distress and to special damages.

71. Defendants' conduct was attended by circumstances of malice, or willful and wanton conduct, which Defendants must have realized was dangerous, or that was done recklessly, without regard to the consequences to Mr. Hernandez de la Torre and Plaintiff.

72. Defendants consciously disregarded a substantial and unjustifiable risk that they knew or should have known would cause the death of another.

73. Defendants' conduct also constituted a felonious killing under Colo. Rev. Stat. §§ 13-21-203 and 15-11-803, in that their conduct caused the death of Mr. Hernandez de la Torre, and that Defendants (1) consciously disregarded (2) a substantial and (3) unjustifiable risk that they would (4) cause the death of another.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and grant:

(a) Appropriate relief at law and equity;

(b) Declaratory relief and other appropriate equitable relief;

(c) Economic losses on all claims allowed by law;

(d) Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(e) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(f) Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

(g)     Pre- and post-judgment interest at the highest lawful rate;

(h)     Any further relief that this Court deems just and proper, and any other relief as allowed by law.

PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.

Dated this 25th day of May 2021.

KILLMER, LANE & NEWMAN, LLP

*s/David A. Lane*
David A. Lane
Reid Allison
KILLMER, LANE & NEWMAN, LLP
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000
dlane@kln-law.com
rallison@kln-law.com


Ken Falkenstein
IRWIN FRALEY, PLLC
6377 S. Revere Parkway, Suite 400
Centennial, Colorado  80111
(303) 999-9000
kfalkenstein@coloradolawyers.com

ATTORNEYS FOR PLAINTIFF