IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 21-cv-01422-CMA-NRN

HENNA HERNANDEZ DE LA TORRE, Individually and as Personal Representative of the Estate of Decedent SAUL HERNANDEZ DE LA TORRE,

    Plaintiff,

v.

LA PLATA COUNTY, COLORADO;
ARCHULETA COUNT, COLORADO;
ROBERT BOSICK, in his official and individual capacities;
RYAN IMONDI, in his official and individual capacities;
PATRICK MOHNEY, in his official and individual capacities;
NATALIE AIKEN, in her official and individual capacities; and
JOHN AND JANE DOES 1-5, in their official and individual capacities,

    Defendant.

---

**ORDER AFFIRMING AND ADOPTING THE RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE N. REID NEUREITER**

---

This matter is before the Court on the Recommendation of Magistrate Judge N. Reid Neureiter. (Doc. # 66.) The Court adopts the Recommendation, as follows.

### I.    BACKGROUND

**A.    ALLEGATIONS IN THE COMPLAINT**[1]

This lawsuit arises from Mr. Saul Hernandez de la Torre's suicide on May 26, 2019, while he was incarcerated at the La Plata County Jail. Mr. Hernandez de la Torre

---

[1] The Court draws the following facts from the Complaint and presumes they are true for purposes of the Motion to Dismiss. *See Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

was arrested in Archuleta County, Colorado, on October 6, 2018. (Doc. # 1 at ¶ 13.) He was placed in La Plata County Jail pursuant to an Intergovernmental Agreement between La Plata County and Archuleta County. (*Id.* at ¶¶ 14–17.)

During Mr. Hernandez de la Torre's incarceration, La Plata County Jail "suffered well-publicized overcrowding and understaffing." (*Id.* at ¶ 17.) Mr. Hernandez de la Torre was housed in the F Block of La Plata County Jail. He was on lock-down 23 hours a day Monday through Saturday, and he was on lock-down the full 24 hours on Sundays. (*Id.* at ¶¶ 15, 18.)

After he had been incarcerated for seven months, Mr. Hernandez de la Torre "refused to eat any of the three meals provided to him." (*Id.* at ¶ 19.) He reported having suicidal thoughts and requested to speak with someone who could help him. (*Id.*) As a result, Mr. Hernandez de la Torre was placed on suicide watch. (*Id.* at ¶ 20.) He also "met with personnel from Axis Mental Health," and they "prepared a safety plan for him in which he was expected to notify the staff if he started feeling like he needed help." (*Id.* at ¶ 21.)

Specifically, Mr. Hernandez de la Torre was asked to provide a written report, called a kite, if he was feeling suicidal. That same day, he submitted a kite, requesting help. However, Mr. Hernandez de la Torre's written request for help was not answered. (*Id.* at ¶¶ 21–23.) Two days later, Mr. Hernandez de la Torre killed himself by hanging, using bed linens left in his cell. He had been left alone for hours, unmonitored, despite being on suicide watch. (*Id.* at ¶¶ 24–25, 33–39.) He was not discovered until hours after he committed suicide.

2

The Estate of Mr. Hernandez de la Torre (the "Estate") and Plaintiff Jhenna Hernandez de la Torre (collectively "Plaintiffs") filed this lawsuit on May 25, 2021. (Doc. # 1.) Plaintiffs brought this lawsuit against several defendants, including La Plata County, Colorado ("La Plata County") and Archuleta County, Colorado ("Archuleta County").

Plaintiffs also sued Defendants Deputy Robert Bosick, Deputy Ryan Imondi, and Sergeant Patrick Mohney (the "Individual Defendants"), who "were at the time sheriff's deputies employed by Defendant La Plata County and assigned as guards at the jail. (*Id.* at ¶¶ 26–31.) Finally, Plaintiffs named Defendant Natalie Aiken, who was a registered nurse at the La Plata County jail. Plaintiffs allege that Defendant Aiken did not check on Mr. Hernandez de la Torre while he was on suicide watch. (*Id.* at ¶¶ 11, 32.)

Plaintiffs brings claims against all defendants under 42 U.S.C. § 1983 for failure to provide medical treatment in violation of the Fourteenth Amendment (Count I) and for wrongful death under C.R.S. § 13-21-202 (Count II).

**B.   PROCEDURAL BACKGROUND**

On August 18, 2021, Archuleta County moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. # 29.) On September 10, 2021, the Individual Defendants[2] and La Plata County (collectively the "La Plata

---

[2] Defendant Natalie Aiken did not file a motion to dismiss. Rather, she filed an answer to the complaint on September 21, 2021. (Doc. # 44.)

County Defendants") filed a partial motion to dismiss the claims against them. (Doc. # 41.)

The Court referred the motions to Magistrate Judge Neureiter for a recommendation. (Doc. ## 33, 43.) Judge Neureiter recommends dismissing the wrongful death claim as to Archuleta County, which Plaintiff concedes must be dismissed. (Doc. # 66 at 14.) However, Judge Neureiter recommends denying Archuleta County's motion to dismiss Plaintiffs' § 1983 claim. (*Id.* at 7–13.)

Judge Neureiter also recommends dismissing the official capacity claims against the Individual Defendants, including Defendant Aiken, even though she did not file a motion to dismiss. (*Id.* at 14.) Judge Neureiter noted that the La Plata County Defendants did not move to dismiss the individual capacity claims against the Individual Defendants, so those claims remain. (*Id.* at 14 n.6.) Although Judge Neureiter determined that Plaintiffs failed to plausibly state a *Monell* claim based on failure to discipline or failure to supervise, he recommends denying La Plata's motion to dismiss because Plaintiffs plausibly alleged a claim based on failure to train. (*Id.* at 18–23.)

Archuleta County and the La Plata County Defendants now object to Magistrate Judge Neureiter's Recommendation. (Doc. ## 70, 71.) Plaintiffs filed responses to the objections on March 25, 2022. (Doc. ## 74, 75.) However, Plaintiffs did not file their own objections to the Recommendation.

## II. LEGAL STANDARD

### A. REVIEW OF A MAGISTRATE JUDGE'S RECOMMENDATION

Under 28 U.S.C. § 636(a)(1)(B), the Court may designate a magistrate judge to consider dispositive motions and submit recommendations to the Court. When a magistrate judge submits a recommendation, the Court must "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

### B. DISMISSAL STANDARD UNDER RULE 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1108 (10th Cir. 1991). However, the court need not accept conclusory allegations without supporting factual averments. *Southern*

5

*Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted).

### III. ANALYSIS

**A. NO-OBJECTION RECOMMENDATIONS**

As an initial matter, the Court notes that no party has objected to Judge Neureiter's Recommendation to: (1) dismiss the wrongful death claim against Archuleta County; and (2) dismiss the officially capacity claims against the Individual Defendants, including Natalie Aiken and John and Jane Does 1–5.

"In the absence of timely objection, the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings"). Applying this standard, the Court is satisfied that Judge Neureiter's recommendations on these matters are sound and that there is no clear error on the face of the record. *See* Fed. R. Civ. P. 72(a).

Therefore, the Court affirms and adopts Judge Neureiter's Recommendation that: (1) the wrongful death claim against Archuleta County be dismissed; and (2) the official capacity claims against the Individual Defendants, including Natalie Aiken and John and

Jane Does 1–5, be dismissed. The individual capacity claims against the Individual Defendants, including Natalie Aiken and John and Jane Does 1–5, will remain.

### B.     ARCHULETA COUNTY'S OBJECTION

Archuleta County moved to dismiss Plaintiffs' § 1983, arguing that it cannot be held vicariously liable for the actions of La Plata County. (Doc. # 29.) Judge Neureiter agreed that vicarious liability is not a basis for liability under § 1983. (Doc. # 66 at 7.) However, Judge Neureiter determined that Archuleta County can be sued under § 1983 based on the non-delegable duty doctrine. (Doc. # 66 at 7–13.)

Archuleta County objects to Judge Neureiter's Recommendation, arguing that Plaintiffs' § 1983 claim against it should be dismissed because the Tenth Circuit has never adopted the non-delegable duty doctrine. (Doc. # 70.) Further, even though courts in this district have applied the doctrine, Archuleta County argues that the doctrine has never been applied to circumstances as alleged by Plaintiffs. (*Id.*) Therefore, Archuleta County argues that it cannot be held liable for what occurred in La Plata County jail. The Court disagrees.

As noted by Judge Neureiter, the government has the "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). This obligation applies to pre-trial detainees, such as Mr. Hernandez de la Torre, and denial of medical treatment may be enforced under the Fourteenth Amendment. *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985).

Further, "the non-delegable duty doctrine essentially holds that the government cannot avoid § 1983 liability by contracting out its constitutional duties to a third party."

*Rustgi v. Reams*, 536 F. Supp. 3d 802, 824 (D. Colo. 2021). The doctrine has not been formally adopted by the Tenth Circuit. However, the District of Colorado has applied the doctrine in numerous cases, finding that a county defendant can be sued under the non-delegable duty doctrine based on a third-party's deficient medical care. *Est. of Lovern by & through Dailey v. Correct Care Sols., LLC*, 18-cv-02573-KLM, 2019 WL 2903589, at *4 (D. Colo. July 3, 2019) (collecting cases and denying motion to dismiss against a county defendant because private healthcare company's allegedly deficient inmate care could be attributed to county defendant pursuant to non-delegable duty doctrine). Accordingly, in this case, the Court agrees with Judge Neureiter that Archuleta County may be sued under the non-delegable duty doctrine.

Archuleta County next argues that the facts presented in this case are "unique" and "materially distinctive" from other cases where the non-delegable duty doctrine has been applied. (Doc. # 70 at 4–8.) Specifically, Archuleta County argues that all aspects of Mr. Hernandez de la Torre's incarceration were handled by La Plata County pursuant to the Intergovernmental Agreement, because Archuleta County had no inhabitable jail. Based on that agreement, Archuleta County argues that it cannot be held liable under the non-delegable duty doctrine. (*Id.*) In other words, because the scope of the Intergovernmental Agreement covered more than just medical care, Archuleta County argues that it cannot be held liable under the non-delegable duty doctrine. Once again, the Court disagrees.

In his Recommendation, Judge Neureiter extensively analyzed case law in the District of Colorado and in other circuits, finding that "[a] county cannot contract with

another for the housing and care of inmates and then stick its head in the sand as to what other county's policies and procedures are." (Doc. # 66 at 13.) The Court agrees. As noted by the court in *Trujillo v. City & Cty. of Denver*, 14-cv-02798-RBJ-MEH, 2016 WL 5791208, at *14 (D. Colo. Sept. 7, 2016), a governmental entity has a constitutional duty to provide adequate medical care, and it cannot avoid liability "by strategically choosing to contract with another public entity." *Id.*

Further, as noted by Judge Neureiter, courts in other jurisdictions have examined factually similar scenarios and found that where both parties are government entities, a county can be held liable under the non-delegable duty doctrine even if the county contracted out all services related to incarceration. (*See* Doc. 66 at 11–13, *analyzing Ford v. City of Boston*, 154 F. Supp. 2d 131 (D. Mass. 2001) and *Young v. City of Little Rock*, 249 F.3d 730 (8th Cir. 2001)). Contrary to Archuleta County's argument, the Court may rely upon the analysis in other circuits as persuasive authority. *See, e.g.*, *United States v. Carson*, 793 F.2d 1141, 1147 (10th Cir. 1986) (noting that while it is well-settled that decisions of one circuit are not binding upon another circuit, the Tenth Circuit often relies upon the analysis and decisions of other circuit courts of appeals).

Archuleta County also argues that it is unreasonable for it to oversee and ensure La Plata County's compliance with constitutional requirements because they are rural counties. (Doc. # 70 at 9–10.) Thus, Archuleta County argues that the Court should consider the policy ramifications of opening it up to liability because "[i]t is neither practical nor realistic to expect Archuleta County . . . to regulate the policies and day-to-day operations of another county's jail facility located far away and outside Archuleta

County's boundaries." (*Id.* at 10.) However, Judge Neureiter noted that Archuleta County "retains its oversight obligations and its obligation to provide constitutionally adequate medical care." (Doc. # 66 at 12.) Judge Neureiter never suggested that Archuleta County is responsible for day-to-day operations of La Plata County jail. Thus, the Court perceives no error.

Further, the Court is not persuaded by Archuleta County's policy argument against applying the non-delegable duty doctrine to this case because it is a rural county. As discussed by the *Trujillo* court, and as applicable to this case, there are two important aims of the non-delegable duty doctrine: (1) permitting Plaintiffs the opportunity to vindicate Mr. Hernandez de la Torre's Constitutional rights; and (2) preventing Archuleta County—a public entity—from avoiding liability by contracting with another public entity, La Plata County. *Trujillo*, 2016 WL 5791208, at *14. These policies weigh heavily in favor of applying the non-delegable duty doctrine in this case, regardless of the location of the county being sued.

Finally, Archuleta County argues that the Recommendation allows the claim to proceed as the "functional equivalent" of a vicarious liability claim. (Doc. # 70 at 10–11.) Judge Neureiter agreed that Archuleta County cannot be held vicariously liable under a § 1983 claim. However, Archuleta County is being sued under the non-delegable duty doctrine, which is a permissible theory of liability. (Doc. # 66 at 7.) As noted by Plaintiffs (Doc. # 74 at 11–12), because of its non-delegable duty, Archuleta County may be held liable for an inadequate policy, practice, or custom of La Plata County, which is attributed to Archuleta County through the non-delegable duty doctrine. *See McGill v.*

10

*Corr. Healthcare Companies, Inc.*, 13-cv-01080-RBJ-BNB, 2014 WL 5423271, at *7 (D. Colo. Oct. 24, 2014) (discussing difference in being held liable under a theory of *respondeat superior* and the non-delegable duty doctrine).

Based on the foregoing, the Court finds no error in the Recommendation. As noted by Judge Neureiter, "the non-delegable duty doctrine is a viable theory of indirect liability between two government entities" (Doc. # 66 at 13), and the § 1983 claim against Archuleta County may proceed. Therefore, the objections are overruled, and the Court affirms and adopts Judge Neureiter's Recommendation to deny Archuleta County's motion to dismiss the § 1983 claim.

C.  **LA PLATA COUNTY'S OBJECTION**

La Plata County moved to dismiss Plaintiffs' § 1983 claim, arguing that Plaintiffs fail to state a plausible claim for municipal liability against La Plata County. (Doc. # 41 at 4–10.) Judge Neureiter examined Plaintiff's claim against La Plata County based on three theories of liability: (1) failure to train; (2) failure to supervise; and (3) failure to discipline. (Doc. # 66 at 15.) Judge Neureiter determined that Plaintiffs failed to plausibly allege a claim for failure to discipline and failure to supervise. (*Id.* at 18–20.) However, Judge Neureiter determined that Plaintiffs plausibly alleged a claim based on a failure to train. (*Id.* at 20–24.)

As an initial matter, Plaintiffs did not object to dismissal of the § 1983 claim based on a failure to plausibly allege a claim for failure to supervise and failure to discipline. The Court is satisfied that Judge Neureiter's recommendations on these matters are sound and that there is no clear error on the face of the record. *See* Fed. R.

11

Civ. P. 72(a). Therefore, the Court affirms and adopts Judge Neureiter's Recommendation to dismiss the § 1983 claim based on an alleged failure to supervise and failure to discipline.

Next, La Plata County objects to Judge Neureiter's Recommendation, arguing that Plaintiffs' § 1983 claim against it should be dismissed because: (1) there is no causal link between the allegations in the complaint and a failure to train claim; and (2) the failure to train allegation it is impermissibly based on a theory of vicarious liability. (Doc. # 71.) The Court disagrees.

To state a claim for municipal liability under § 1983, known as a *Monell* claim, a plaintiff must allege facts which, if true, would establish "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Commr's*, 151 F.3d 1313, 1316 (10th Cir. 1998) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A municipal policy or custom can take the form of:

> (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted).

To state a *Monell* claim based on the failure to train, "a plaintiff must sufficiently allege that the failure 'amounts to deliberate indifference to the rights of persons with

whom the [County] come[s] into contact.'" *Rehberg v. City of Pueblo*, 10-cv-00261-LTB-KLM, 2012 WL 1326575, at *4 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Ordinarily, to satisfy the deliberate indifference standard, a plaintiff must demonstrate "[a] pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

However, "in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference." *Id.* (internal quotations and citation omitted). Deliberate indifference may be found "if a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations." *Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998) (citing *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997); *Canton*, 489 U.S. at 390 and n.10).

In this case, Plaintiffs have not alleged a pattern of unconstitutional violations. Thus, their failure to train claim cannot proceed unless they meet the "narrow range of circumstances" where the need for training is "so obvious" that a lack of training demonstrates deliberate indifference. The La Plata County Defendants object that there is no causal link between the allegations in the complaint and a failure to train claim. (Doc. # 71.) The Court disagrees.

As discussed in Judge Neureiter's Recommendation, the facts presented by Plaintiffs fall within the narrow range of circumstances where deliberate indifference

13

may be found if a violation of federal rights is a "highly predictable" or "plainly obvious" consequence of inaction. *Barney*, 143 F.3d at 1308. Specifically, Plaintiffs have alleged that La Plata County Defendants knew Mr. Hernandez de la Torre was suffering from suicidal ideation. Mr. Hernandez de la Torre told them he was having suicidal ideation. In fact, he met with providers to discuss his suicidal ideation.

      Mr. Hernandez de la Torre was placed on suicide watch and was asked to provide written notice if he was having suicidal ideation. He submitted a written notice the same day, but Defendants did not respond to the notice. While he was on suicide watch, Defendants left Mr. Hernandez de la Torre unattended for a period of hours, failing to monitor him. During that unattended time, Mr. Hernandez de la Torre committed suicide by hanging, and he was left hanging in his cell for over two hours. Further, as noted by Plaintiffs, Defendants' conduct goes beyond a simple failure to monitor. Despite the fact that Mr. Hernandez de la Torre was on suicide watch, Defendants "provided him with the means to kill himself" (Doc. # 1 at ¶ 56) by leaving bedsheets that he could use to commit suicide.

      These facts are sufficient for the Court to find that, at the motion to dismiss stage, Plaintiffs have alleged enough facts to demonstrate that the need for training is "so obvious" that a lack of training demonstrates deliberate indifference. The Court also finds that this result is consistent with other decisions in the Tenth Circuit, where courts have denied a motion to dismiss based on similar factual allegations. *See Kerns v. Sw. Colorado Mental Health Ctr., Inc.*, 18-cv-2962-WJM-SKC, 2019 WL 6893022, at *12 (D. Colo. Dec. 18, 2019) (finding that, based on the "asymmetry of available information,"

the plaintiffs need not plead a failure to train claim with greater factual specificity, but should be prepared to state and prove their claims with much greater specificity at trial or summary judgment); *see also Finlinson v. Millard Cty.*, 16-cv-01009-TC, 2018 WL 5438436, at *26 (D. Utah Oct. 29, 2018) (finding, at the summary judgment stage, that the plaintiff's allegations fell within the "narrow range of circumstances" to find that the government defendant had not adequately trained its officers to respond to mental health crisis); *Allen v. Muskogee, Okl.*, 119 F.3d 837, 843 (10th Cir. 1997) (recognizing that inadequate mental health training may amount to deliberate indifference even absent a pattern of tortious conduct).

Based on the foregoing, the Court agrees with Judge Neureiter that "[t]he death of a suicidal inmate is 'highly predictable' or 'plainly obvious' consequence of a training program that permits a suicidal inmate to be left in his cell alone, unmonitored and with access to materials that can be used to hang himself." (Doc. # 66 at 23–24.)

The La Plata County Defendants also argue that the failure to train claim is based on a theory of vicarious liability, which is impermissible in a § 1983 claim. (Doc. # 71 at 3–5.) La Plata County Defendants essentially argue that to state a claim for municipal liability, Plaintiffs must allege the existence of a specific policy. (*Id.*) This argument also fails.

In a municipal liability claim, "it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery." *Taylor v. RED Dev., LLC*, No. 11-2178-JWL, 2011 WL 3880881, at *4 (D. Kan. Aug. 31, 2011) (quoting *Thomas v. City*

*of Galveston, Texas*, 800 F. Supp. 2d 826, 842 (S.D. Tex. 2011)) (collecting cases and examining pleading standard for municipal liability claim in light of *Iqbal* and concluding that a plaintiff may proceed with claim in the absence of detailed information about municipal training); *Albers v. Jenison*, No. 18-2185-DDC-JPO, 2018 WL 5311862, at *12, n.7 (D. Kan. Oct. 26, 2018) (noting that courts have "grappled with the governing pleading standard" for municipal liability claims and observing that, at least in that district, the trend "is to permit plaintiffs alleging municipal liability to offer minimal factual allegations" where they do not have access to policies and procedures). "Accordingly, only minimal factual allegations" are required at this stage of the proceedings. *City of Galveston*, 800 F. Supp. 2d at 842–43 (collecting cases and discussing pleading standard for municipal liability claims in light of *Iqbal*). Further, allegations need not specify what the policy is; rather, allegations may be more general about inadequate training. *Id.*

As outlined above, the Court has no trouble finding that Plaintiffs have plausibly alleged a *Monell* claim based on a failure to train. Plaintiffs have plausibly alleged that La Plata County Defendants "failed to properly train [the deputies and nurse] … despite the obvious need for scrutiny in specialized trainings … regarding decisions about monitoring and care required for detainees who are placed on suicide watch at the jail …." (Doc. # 1 at ¶ 42.)

Therefore, based on the foregoing, the La Plata County Defendants' objections are overruled, and Judge Neureiter's Recommendation is affirmed and adopted.

## IV. CONCLUSION

For the foregoing reasons, the Court AFFIRMS and ADOPTS Judge Neureiter's Recommendation (Doc. # 66), and ORDERS as follows:

- Defendant Archuleta County's Motion to Dismiss (Doc. # 29) is GRANTED in part and DENIED in part.
    - Plaintiff's claim for Wrongful Death under C.R.S. § 13-21-202 (Second Claim for Relief) is DISMISSED, with prejudice, as to Defendant Archuleta County. The Wrongful Death claim remains as to other Defendants.
    - The Motion to Dismiss (Doc. # 29) is DENIED in all other respects.
- La Plata County Defendants' Partial Motion to Dismiss (Doc. # 41) is GRANTED in part and DENIED in part.
    - The official capacity claims against Defendants Robert Bosick, Ryan Imondi, Patrick Mohney, Natalie Aiken, and John and Jane Does 1-5 are DISMISSED, with prejudice. The individual capacity claims against these defendants remain.
    - The motion to dismiss portions of the § 1983 claim (First Claim for Relief) for failure to discipline and supervise is GRANTED. However, the motion to dismiss portions of the § 1983 municipal liability claim (First Claim for Relief) for failure to train is DENIED. Thus, the First Claim for Relief remains solely as to failure to train.

- The Motion is DENIED in all other respects.

DATED: March 29, 2022

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge